**In re KOREAG, CONTROLE et REVISION S.A., as Official Liquidator of Mebco Bank, S.A. (In Liquidation) pursuant to the Insolvency Laws of the Federal Republic of Switzerland.**

**Bankruptcy No. 90–B–10037 (CB).**

United States Bankruptcy Court,
S.D. New York.

Aug. 26, 1991.

Kronish, Lieb, Weiner & Hellman by Celia Goldwag Barenholtz and Richard A. Edlin, New York City, for Koreag, Controle et Revision S.A.

Graubard Mollen Horowitz Pomeranz & Shapiro by Jack Weinberg and Marianne Bretton–Granatoor, New York City, for Refco F/X Associates, Inc.

DECISION ON PETITION FOR RELIEF ANCILLARY TO FOREIGN PROCEEDING UNDER SECTION 304 OF THE BANKRUPTCY CODE AND FOR A PRELIMINARY INJUNCTION

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

This matter comes to this Court by way of section 304 of the Bankruptcy Code (the "Code") pursuant to which an ancillary proceeding was filed by the Koreag, Controle et Revision S.A. (the "Petitioner") as the Official Liquidator of Mebco Bank, S.A. ("Mebco"), a foreign corporation organized and existing under the laws of Switzerland. Refco F/X Associates, Inc. ("Refco"), a corporation organized and existing under the laws of New York with its principal place of business in New York City, has filed (1) opposition to Petitioner's motion for relief under the Code and for a preliminary injunction and (2) a cross-motion, pursuant to Rule 12(b), Fed.R.Civ.P., and Bankruptcy Rule 1011, to dismiss the petition.

On May 5, 1989, Refco commenced an action against Mebco in the United States District Court for the Southern District of New York, *Refco F/X Associates Inc. v.*

*Mebco Bank, S.A.*, 108 B.R. 29 (the "District Court Action"). Refco also obtained an *ex parte* order of attachment against Mebco's bank account at Swiss Bank—N.Y. In the District Court Action, Refco made a motion to confirm the order of attachment and Mebco cross-moved to dismiss the complaint. The district court denied Mebco's motion to dismiss for *forum non conveniens*. The district court also denied Mebco's motion to dismiss on other grounds, without prejudice to seeking relief by means of a section 304 petition to this Court. The district court stated that if Mebco did not file such a petition, Refco's motion to confirm the attachment would be immediately granted. On January 5, 1990, the Petitioner filed the instant petition seeking relief pursuant to section 304, together with a motion to enjoin Refco's prosecution of the District Court Action.

## FACTS

Refco is a dealer in foreign currencies, including forward, spot contracts and options thereon. Mebco is not qualified or authorized to do business in the State of New York. Stip. at ¶ 2.[1] Before its liquidation, Mebco engaged in the banking business and, in the course of such business, dealt in foreign currencies for its own account. Stip. at ¶ 4.

In May 1986, a representative from Refco's London Office met with an officer of Mebco at Mebco's sole office in Geneva to discuss a potential trading relationship. Stip. at ¶ 6. Subsequent contacts between Mebco and Refco's London office took place exclusively in Europe. Stip. at ¶ 9. In 1987, pursuant to Refco's request, Mebco presented to Refco its annual audited financial statement, dated December 31, 1986. Subsequently, Refco requested and received Mebco's annual report for 1987. Stip. at ¶ 6.

Refco and Mebco began trading currencies with each other in June 1988, when Refco extended to Mebco a $10 million line of credit. Stip. at ¶ 8. Refco continued to rely on Mebco's financial statements during Refco's ongoing business relationship with Mebco. Weiss Aff. at ¶ 6.

Between June and April 1989, Refco and Mebco conducted business on a daily basis, sometimes conducting as many as five currency transactions in a single day. Stip. at ¶ 10. Between April 20, 1989 to April 27, 1989, Refco and Mebco entered into various agreements to exchange currency as they had done in the past. Stip. at ¶ 17. These agreements contemplated that the purchases and sales of currencies would be simultaneous transactions. Stip. at ¶ 16. The transactions were twofold: (1) Refco delivered into the Mebco general account at Swiss Bank—N.Y., $6.9 million U.S. dollars and, in exchange, Refco was to receive from Mebco foreign currencies of comparable value; and (2) Refco was to receive from Mebco more than $4 million U.S. dollars in exchange for foreign currencies that Refco delivered to Mebco. The foreign currency side of the transactions was to take place at various banks in Europe. The U.S. dollar side of the transactions was to be effected through Mebco's general account at Swiss Bank—N.Y. Stip. at ¶ 5, 14, 15; Weiss Aff. at ¶ 6.

On April 27, 1989, at 10:15 a.m. (EST), Switzerland's Federal Banking Commission placed Mebco into liquidation. Stip. at ¶ 18. At 11:00 a.m. (EST), petitioner was appointed the Official Liquidator of Mebco by the Federal Banking Commission in Switzerland. Stip. at ¶ 19.

Following the decision to place Mebco into liquidation and the appointment of Petitioner as Official Liquidator of Mebco, a public announcement was made in Switzerland alerting the financial and investing public of these events. Levy Aff. at ¶ 3. This information was reported almost immediately by the Dow Jones International News Service and later by *The Financial Times.* Stip. at ¶ 20.

Shortly thereafter, at 3:46 p.m. (EST), Refco wire transferred funds into Mebco's account at Swiss Bank—N.Y. Stip. at ¶¶ 21

---

1. The Stipulation of Facts dated September 14, 1989 (Exhibit 3), between Refco and Mebco will be referred to as "Stip."

and 22. At 3:52 p.m. the following day, April 28, 1989, Refco made yet another deposit. Stip. at ¶ 22. Mebco delivered some foreign currencies to Refco, but failed to deliver foreign currencies against $6.9 million of the U.S. dollars that Refco had sold to Mebco and deposited at Swiss Bank—N.Y. Stip. at ¶ 22; Weiss Aff. ¶ 9.

On April 27, 1989, at approximately 2:00 p.m. (EST), Mebco's account officer at Swiss Bank, Ernest Kung ("Kung"), read over the Dow Jones International News Service that the Swiss Banking Commission revoked Mebco's banking license. Kung Aff. at ¶ 5. Kung immediately stopped all of Mebco's payment orders to Refco. Kung Aff. at ¶ 5. The next day, April 28, 1989, Swiss Bank received a telex from Swiss Bank Corporation in Geneva (a) advising that Mebco's license was revoked by the Swiss Banking Corporation, (b) directing that Swiss Bank immediately stop working with Mebco, and (c) notifying Swiss Bank that all Mebco accounts had been blocked and that no other commitments were to be taken. Stip. at ¶ 23; Kung Aff. at ¶ 7.

There is in excess of $12.5 million in Mebco's Swiss Bank—N.Y. account.[2] This represents deposits, amounting to millions of dollars, from Mebco creditors in addition to Refco. Mebco currently has over 400 creditors around the world.

On May 3, 1989, Gary Weiss ("Weiss") of Refco telephoned Mebco in Geneva, Switzerland. Stip. at ¶ 26. Weiss's call was referred to a Mr. Savio who claimed that Mebco's accounts had been frozen and that his company, Koreag, had been named "liquidator." Stip. at ¶ 27. Savio also told Refco that (i) Mebco's Geneva banking license had been revoked by the Swiss Banking Commission at 11:00 a.m. (EST) on April 27, 1989, and (ii) at that time, his company was appointed as "liquidator." Stip. at ¶ 27; Weiss Aff. at ¶ 14. Savio also told Weiss that Mebco's side of the open transactions with Refco would not be completed. Stip. at ¶ 31; Weiss Aff. at ¶ 16.

Weiss demanded that Mebco immediately return to Refco the U.S. dollars and foreign currencies that Refco deposited into Mebco's accounts. Stip. at ¶ 29.

On May 3, 1989, Citibank—N.Y., on behalf of Refco, sent a telex a message to Swiss Bank—N.Y., demanding the return of $7,407,510 that Refco deposited into Mebco's account at Swiss Bank on April 27, 1989. Stip. at ¶ 33. On May 3, 1989, Citibank—N.Y., on behalf of Refco, sent a telex message to Swiss Bank—N.Y., demanding the return of $2,000,000 that Refco deposited into Mebco's account at Swiss Bank—N.Y. Stip. at ¶ 34.

On January 5, 1990, the Petitioner filed the instant petition seeking relief pursuant to section 304, together with a motion to, *inter alia*, enjoin Refco's prosecution of the District Court Action and to direct turnover of all the funds in Mebco's Swiss Bank—N.Y. account to the Petitioner for administration in the Swiss Proceedings. Refco, in rebuttal, objects to the injunctive relief requested by the Petitioner and to the turnover of Mebco's assets. Additionally, Refco seeks to dismiss the section 304 petition.

## DISCUSSION

Section 304 of the Code authorizes a representative appointed in a foreign bankruptcy proceeding to file a petition in the United States Bankruptcy Court ancillary to the foreign proceeding. The fundamental purpose of section 304 is to afford the foreign bankrupt the opportunity to "prevent the piecemeal, distribution of [its] assets [located] in this country ..." by local creditors. *Victrix Steamship Co. S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir.1987); *accord Cunard Steamship Co. Ltd. v. Salen Reefer Service, A.B.*, 773 F.2d 452, 453–54 (2d Cir.1985); *In re Lines*, 81 B.R. 267 (Bankr. S.D.N.Y.1988).

A section 304 filing, however, does not create a full scale bankruptcy case with

---

**2.** This figure is not the most current since the amount of funds in Mebco's Swiss Bank—N.Y. account may have increased since the time the briefs were submitted and the hearing was conducted.

the protections of an automatic stay or with the Code's avoiding powers. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324–25 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5821, 6280, 6281. *See also, Matter of Axona Int'l Credit & Commerce, Ltd.,* 88 B.R. 597, 606 (Bankr.S.D.N.Y.1988); *Universal Casualty & Surety Co., Ltd. v. Gee (In re Gee),* 53 B.R. 891, 896 (Bankr.S.D.N.Y.1985); *In re Trakman,* 33 B.R. 780, 783 (Bankr. S.D.N.Y.1983); *Matter of Culmer,* 25 B.R. 621, 624 (Bankr.S.D.N.Y.1982).

Instead, a section 304 petition creates a bankruptcy case limited in scope and designed to aid in the foreign proceedings. *Matter of Axona,* 88 B.R. at 606.

The limited scope of a section 304 petition, however, is balanced with the broad powers granted the bankruptcy court in determining the type of relief to be granted the section 304 petitioner. The bankruptcy court may:

(1) enjoin the commencement or continuation of

(A) any action against

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act on the commencement on continuation of any judicial proceeding to create or enforce a lien against the property of such estate;

(2) order turnover of the property of such estate, or the proceeds of such property, to such representative; or

(3) order other appropriate relief.

11 U.S.C. § 304(b).

The powers of the bankruptcy court in a section 304 context have been described as giving the Court the ability to "mold relief in near blank check fashion...." *Matter of Culmer,* 25 B.R. at 624. In making a determination as to the type of relief to grant, the bankruptcy court "shall be guided by what will best assure an economical and expeditious administration of such estate." 11 U.S.C. § 304(c). Section 304(c) sets forth six factors to be taken into account when fashioning the appropriate relief in a section 304 petition that will accomplish an economical and expeditious administration of the bankrupt's estate.

It is apparent that Congress, in allowing the bankruptcy court flexibility in the exercise of the section 304 powers, recognized that transnational bankruptcies give rise to a "multitude of complex and unforseen problems...." *In re Gee,* 53 B.R. at 896–897; H.R.Rep. No. 595, 95th Cong., 1st Sess., 324–25 (1977), S.Rep. No. 989, 95th Cong., 2d Sess., 35, 1978, U.S.Code Cong. & Admin.News 5963, 6281.

*Jurisdiction*

Refco's threshold argument is jurisdictional. It claims that this Court lacks subject matter jurisdiction under section 304 because under the Code and the laws of New York, the attached funds are neither part of Mebco's estate nor property of Mebco. The following are the legal theories upon which Refco relies:

(a) Refco properly and timely exercised its rights under the U.C.C. to cancel its currency exchange agreements and reclaim its money;

(b) Refco was defrauded by Mebco's misrepresentation of its financial condition when Refco agreed to the currency exchanges and when Refco made the payments at issue here;

(c) Refco's money is impressed with a constructive trust in favor of Refco because the money was obtained wrongfully, and Mebco and its creditors would be unjustly enriched if the liquidation were permitted to retain Refco's funds; and

(d) when the Swiss liquidation proceeding was commenced, the currency exchange agreements between Refco and Mebco were executory. Even if Refco's funds (which were delivered after the liquidator's appointment) were deemed a part of Mebco's "estate" or Mebco's property at the time of delivery, Refco's funds cannot be retained by the liquidation without performing Mebco's side of the transaction.

All that a foreign representative need do to invoke the bankruptcy court's jurisdiction under section 304 is allege that: (1) a foreign proceeding was commenced against the debtor; (2) the petitioner is a foreign representative entitled to file the action under section 304; and (3) "the debtor had certain assets within the judicial district where the petition was filed."[3] *In re Trakman*, 33 B.R. at 783. *See also Metzeler v. Bouchard Transp. Co. Inc. (In re Metzeler)*, 78 B.R. 674, 678–79 (Bankr. S.D.N.Y.1987); *Strelittz v. Stuppel (Matter of Stuppel)*, 17 B.R. 413, 415 (Bankr. S.D.Fla.1981).

A foreign representative is defined in section 101(23) of the Code to mean a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding." 11 U.S.C. section 101(23). Clearly, the Petitioner is a foreign representative falling within the scope of this definition. It is undisputed that under Swiss law, "once a bank is placed into liquidation, the Banking Commission appoints a liquidator to administer the bank's assets and to act for the bank in all areas." Stip. at ¶ 9.

A foreign proceeding is one which is either judicial or administrative in a "foreign country in which the debtor's domicile, residence, principal place of business or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. § 101(22). The proceedings in Switzerland, where Mebco's principal place of business is located, are liquidation proceedings clearly falling within the definition of a foreign proceeding. Stip. at ¶ 1.

■ This section 304 petition also satisfies the last requirement, that the debtor have assets within the judicial district where the section 304 petition was filed. Mebco has a bank account in Swiss Bank— N.Y. containing $12.5 million. Refco claims that pursuant to the Code and the laws of New York, the attached funds, totalling $6.9 million, cannot constitute part of Mebco's estate subject to this Court's jurisdiction. In taking this position, Refco is placing the proverbial "cart before the horse." Section 304(c) allows the bankruptcy court to turnover assets located locally to the foreign representative, thereby subjecting local creditors to the laws of the foreign tribunal. It is axiomatic that if a local creditor is forced to have its rights adjudicated in a foreign forum, that creditor will not enjoy the same rights that it would otherwise enjoy in an American case. The inherent question faced by all courts when asked to turnover assets in a section 304 proceeding is whether the rights of its local creditors should be determined pursuant to American jurisprudence or whether the interests of justice would be better served if the local creditor were subjected to the laws of a foreign country in the context of the foreign proceeding. By arguing that pursuant to the Code and the laws of New York this Court lacks subject matter jurisdiction over the attached funds because they are not part of Mebco's estate, Refco's underlying assumptions are that the petitioner's turnover request will be denied, Refco will not be forced to participate in the Swiss liquidation proceedings and that Refco's claim will be adjudicated in an American court. Refco's contentions that the funds in the Swiss Bank—N.Y. are subject to attachment goes to this Court's consideration of the Petitioner's turnover request not to the jurisdictional issue.

■ Therefore, when conducting a jurisdictional analysis, the laws in the foreign proceeding are determinative of whether the foreign bankrupt has assets located in the district in which the section 304 petition was filed. *Matter of Toga Mfg., Ltd.*, 28 B.R. 165, 167 (Bankr.E.D.Mich.1983) (Wherein the court looked to the bankruptcy laws of the foreign country to determine whether property located in the United States was part of the foreign bankrupt's estate) (cited in *In re Metzeler*, 78 B.R. at

**3.** Controversy exists as to whether this last requirement must be satisfied in order to establish jurisdiction. *In re Metzeler*, 78 B.R. 674. However, that is not an issue before this Court and therefore is not considered in this decision.

677); *see also Matter of Axona*, 88 B.R. at 599 (the court's section 304 jurisdiction was invoked where foreign bankrupt had bank accounts located in New York which had been attached by local creditors). Under Swiss law, the funds in Mebco's bank account at Swiss Bank—N.Y. are included in the property involved in Mebco's liquidation proceedings. Levy Aff. ¶ 3. The last jurisdictional requirement is satisfied since the funds are located in this district.

### The section 304(c) Factors

The Petitioner seeks an order enjoining the continuation of the District Court Action; enjoining the commencement of any actions against Mebco or its property located in this district; enjoining the attachment or garnishment and the creation, perfection and enforcement of any lien, setoff or other claim against any asset of Mebco located within this district; and directing that all assets held for the account of Mebco and all monies or other assets located in this district which are now due or which hereafter may become due to Mebco be turned over to the Petitioner.

The six section 304(c) factors are:

(1) just treatment of all holders of claims against or interest in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent disposition of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c).

The gravamen of the issues before this Court is the proper weight that should be accorded "comity", the fifth enumerated factor. Refco correctly points out that neither section 304(c) nor its legislative history explicitly provide that comity should be afforded more weight than the other factors. The bankruptcy court in this district, however, views comity as a significant factor in the application of section 304(c). Judge Lifland, in *Matter of Culmer*, 25 B.R. 621 (Bankr.S.D.N.Y.1982), stated that "[a]ll of the factors listed in section 304(c) have historically been considered within a court's determination whether to afford comity to a proceeding in a foreign nation.". *Id.* at 629. Similarly, Judge Brozman, in *In re Gee*, 53 B.R. 891 (Bankr.S.D.N.Y.1985), stated that comity will usually "be the most significant [factor] ... where it serves as the crux of the debtor's argument." 53 B.R. at 891. This district is not alone in its assessment of the significance of comity. *See Interpool, Ltd. v. Certain Freights of M/V Venture Star*, 102 B.R. 373, 377 (D.N.J.1988) (where the court cited *In re Gee*). This view is not without opposition and criticism. *See, Matter of Papeleras Reunidas, S.A.*, 92 B.R. 584, 594 (Bankr.E.D.N.Y.1988) (the bankruptcy court, in flatly rejecting the view of the bankruptcy court in this district, gave equal weight to comity). This Court is compelled to follow the lead of *Matter of Culmer* and *In re Gee*. While it is true that neither the Code nor its legislative history explicitly require that comity be afforded more weight than the other section 304(c) factors, neither does it provide that all of the factors must be given equal weight. Comity is inevitably the more significant factor since the other factors (except for the sixth element dealing with the fresh start theory) are inherently taken into account when considering comity. *Matter of Culmer*, 25 B.R. at 629.

The often cited definition of comity is:

The recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895); *Cunard*

*Steamship Co.*, 773 F.2d at 456; *Matter of Culmer*, 25 B.R. at 629.

■ The mere filing of a section 304 petition does not automatically require that the local bankruptcy court grant comity to the foreign court. Instead the bankruptcy court must make a case-by-case determination. Comity shall be granted where it has been demonstrated that the foreign court is a court of "competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard Steamship Co.*, 773 F.2d at 457; *In re Gee*, 53 B.R. at 901. This Circuit recognizes that the general principles of comity as well as the provisions of section 304 require recognition of foreign bankruptcies where the foreign bankruptcy proceedings "comport with due process and fairly treat claims of local creditors." *Victrix Steamship*, 825 F.2d at 714; *see also, Banque de Financement S.A. v. First Nat. Bank of Boston (Banque de Financement)*, 568 F.2d 911, 921 (2d Cir.1977). And when examining all of the section 304(c) factors, the focus of the bankruptcy court is "whether the relief petitioner[ ] seek[s] will afford equality of distribution of the available assets." *Matter of Culmer*, 25 B.R. at 628 (cited in *In re Banco Nacional de Obras y Servicios Publicos*, 91 B.R. 661, 667 (Bankr. S.D.N.Y.1988) (court stated that comity "will not be granted in the bankruptcy context if it would result in forcing American creditors to participate in foreign proceedings in which their claim will be treated in some manner inimical to this country's policy of equality")). Naturally, comity shall not be granted where, by doing so, the local court is approving of a transaction that is "vicious, wicked or immoral, and shocking to the prevailing moral sense." *Intercontinental Hotels Corp. v. Golden*, 15 N.Y.2d 9, 254 N.Y.S.2d 527, 529, 203 N.E.2d 210, 212 (1964) (quoted in *Cornfeld v. Investors Overseas Services, Ltd.*, 471 F.Supp. 1255, 1259 (S.D.N.Y.1979)).

■ The purpose of granting comity to foreign bankruptcy proceedings is quite simple and very logical. Essentially, section 304 reflects the notion that it is in the best interests of a foreign debtor and its entire creditor body to disburse the assets of that debtor, wherever located, "in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." *Cunard Steamship Co.*, 773 F.2d at 458; *Victrix Steamship*, 825 F.2d at 714 (court spoke to the "public policy of ensuing equitable and orderly distribution of local assets of a foreign bankrupt"). Given the stated purpose of the doctrine of comity and of section 304, when determining whether to suspend this 304 proceeding and turnover the attached funds to the Petitioner to allow the assets to be administered in the Swiss proceeding, this Court must consider not only the treatment Refco would be afforded under Swiss law, *i.e.*, the procedural fairness of the Swiss law, but also determine what will result in the efficient and economical administration of Mebco's pending Swiss bankruptcy proceeding. This, of course, is the inherent tension found within the section 304(c) factors. If, however, the "foreign law is not repugnant to our own the scale will ordinarily tip in favor of having the foreign tribunal liquidate claims against the estate, because the equitable and orderly distribution of the debtor property can best be accomplished in a single proceeding." *In re Banco Nacional de Obras y Servicios Publicos*, 91 B.R. at 667.

■ Refco argues against turnover of the attached funds to the Swiss proceeding because its claim will not be treated the same as if its were adjudicated in the United States. Specifically, Refco claims that under the Code and the laws of New York, its claim to the attached funds would enjoy secured status whereas under the laws of Switzerland, its claims would be relegated to the status of an unsecured creditor.[4] This Court need not address the merits of Refco's claim that under the Code and New York laws it holds a secured claim because

---

4. It is undisputed that under the laws of Switzerland, Refco would be treated as an unsecured creditor.

that is not the test under section 304.[5] The test is whether the proceedings in Switzerland comport with fundamental notions of fairness, *Matter of Banque De Financement, S.A.*, 568 F.2d at 921, not that the foreign bankruptcy laws are a mirror image of our own. *In re Gee*, 53 B.R. at 904; *Matter of Axona*, 88 B.R. at 610–11 ("whether or not Hong Kong law is identical to American law, Hong Kong law is not repugnant to our ideas of justice, and is inherently fair and regular"); *see also Daniels v. Powell*, 604 F.Supp. 689, 693 (N.D.Ill.1985) (the mere fact that the foreign law is not identical is insufficient to deny comity). An examination of the section 304(c) factors will assist this Court in reaching such a determination.

In its support, Refco relies on the holdings in *Matter of Toga*, 28 B.R. 165 and *Matter of Papeleras*, 92 B.R. 584. This Court, however, disagrees with the respective holdings in those cases.

The bankruptcy court in *Toga* refused to turnover the assets located in its district to the Canadian court to be administered in the Canadian bankruptcy proceeding where the local creditors would not enjoy under Canadian law the same secured status they would enjoy in the United States. *Toga*, 28 B.R. at 170. Indeed the facts in *Toga* are strikingly similar to those before this Court. However, the reasoning of the court in *Toga* has been criticized as protectionist. In a more recent decision, Judge Lifland noted that in *Toga* the court's limited focus on affording the U.S. creditor the same rights it enjoyed under U.S. laws, prevented the court "from considering the full scope and procedural fairness of Canadian law." *Matter of Axona*, 88 B.R. at 611. (citing, Note, Section 304 of the Bankruptcy Code; Has it Fostered the Development of an "International Bankruptcy System," Colum.J.Transnat'l L. 541, 566 (1984)).

The facts in *Matter of Papeleras* are altogether different than those before this Court. In *Papeleras*, the bankruptcy court refused to require the local creditor to have its claim satisfied in a Spanish court. The court in *Papeleras* held that the local creditor would not be afforded just treatment in the Spanish proceeding because under Spanish law, only liquidated claims are recognized and the local creditor held a disputed claim at the time the Spanish proceedings commenced. *Papeleras*, 92 B.R. at 590. The local creditor's claim was not recognized under Spanish law until it had been liquidated by a determination by a United States Circuit Court of Appeals by which point most of the assets of the bankrupt had been liquidated. *Id.* To the extent that *Papeleras* stands for the proposition that under section 304(c), the local creditor must enjoy equal status under the foreign law as it would in the United States, this Court respectfully disagrees and views it as another example of protectionism. However, to the extent that *Papeleras* stands for the proposition that a section 304 petitioner's request to turnover assets to a foreign forum will be denied where the laws of the foreign court do not comport with the Code's notion of fair and equal treatment of all creditors because claims are not recognized under Spanish law until liquidated, this Court is in agreement.

Therefore, this Court will next turn to the section 304(c) factors to determine whether, in light of the aforementioned objectives and concerns, comity should be granted and the funds turned over to the Petitioner to be administered in the Swiss proceeding.

Section 304(c)(1) calls for the just treatment of all holders of claims against or interest in the bankrupt's estate. The Swiss laws call for an orderly administration of the bankrupt estate. Refco concedes that Swiss law does not discriminate against non-Swiss creditors. As stated above, this Court rejects Refco's argument that in order to find just treatment, Refco's claim must be treated the same under Swiss law as under American and New York law.

---

**5.** The remainder of this decision will proceed on the assumption that Refco's claim is entitled to a secured status pursuant to the Code and New York laws.

Section 304(c)(2) goes to the inconvenience and prejudice of the local creditor if required to participate in the foreign proceeding. This calls for a balancing between the inherent prejudice and inconvenience to local creditors if required to participate in proceedings abroad against the economic and expeditious administration of the foreign bankrupt's estate. When a United States creditor conducts business with a foreign corporation, the ever present risk is that the creditor will be forced to adjudicate its claim against the foreign corporation in the foreign country. Courts have recognized the implied assumption of this risk by U.S. creditors:

"[E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy, which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him. He is conclusively presumed to have contracted with a view to such laws of that government, because the corporation must of necessity be controlled by them, and it has no power to contract with a view to any other laws with which they are not in entire harmony. It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere."

*Canada Southern Railway v. Gebhard*, 109 U.S. 527, 537–38, 3 S.Ct. 363, 370, 27 L.Ed. 1020 (1883) (quoted in *Matter of Culmer*, 25 B.R. at 632).

Refco, as a sophisticated creditor with substantial assets and European offices, must have contemplated the risks involved when it decided conduct business with Mebco, a foreign business. Refco does not claim that it is unable to assert its claim in Switzerland, rather it seeks to maintain the same rights it enjoys under domestic laws. As the court in *Matter of Culmer* observed, "[o]ne who invests in a foreign corporation subjects his investment to foreign law and may not seek to obtain greater rights than his co-creditors by suing in an American court." *Culmer*, 25 B.R. at 632. Any prejudice and inconvenience to Refco in being forced to assert its claim in Switzerland is nothing more than what it should have understood to be a possible outcome of conducting business with Mebco. Certainly, a fair, economical and expeditious administration of Mebco's estate should not be jeopardized simply because Refco is not pleased with the results of its assumption of certain risks.

Section 304(c)(3) is satisfied insofar as Swiss law provides for setting aside preferential or fraudulent dispositions of property.

Section 304(c)(4) provides that distribution under the Swiss laws be in substantial accordance with the provisions of the Code. Refco does not dispute that Switzerland's insolvency procedures are fundamentally fair. In fact, they are substantially similar to ours. Once a bank is placed into liquidation, the Federal Banking Commission appoints a liquidator to administer the bank's assets and to act for the bank in all areas. If the bank is found to be insolvent, the assets are distributed pursuant to Swiss law. Creditors have the right to petition the Swiss court if they are dissatisfied with their distribution. Just like the Code, Swiss law provides for a ranking of creditors and for equal treatment of creditors within the same ranking. Again, section 304(c)(4) calls for *substantial accordance* with, not *absolute accordance* with, the provisions of the Code. The fact that Refco's claim enjoys different status under Switzerland's laws does not show that there is not substantial similarity. Moreover, the factor goes to the procedural fairness and due process of the foreign laws.

A consideration of the section 304(c) factors leads this Court to conclude that comity should be granted to the Swiss

bankruptcy proceedings. The laws of Switzerland are not repugnant and violative of our fundamental notions of fairness. As with the bankruptcy cases in this country, the marshalling of Mebco's assets should be conducted in one forum with one set of laws so as to ensure equality among all of the creditors. The concerns raised by Refco are not sufficiently compelling to deny comity and allow the attached funds to be enjoyed by Refco at the expense of all of Mebco's other creditors. Therefore, the funds in Mebco's bank account in Swiss Bank are hereby directed to be turned over to the Petitioner as Official Liquidator of Mebco.

*Petitioner's Claim for Wrongful Attachment*

■■■ The Petitioner seeks damages for wrongful attachment. Petitioner argues that attachment was obtained wrongfully because Refco was aware, prior to the time it went to the district court, that the Swiss insolvency proceedings had commenced and that Refco was required to seek relief in Switzerland. However, absent a ruling by a court of competent jurisdiction directing Refco to litigate its claims in Switzerland, Refco was fully entitled to pursue its remedies under American law. Therefore, the Petitioner's claim for damages is denied.

*Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7056, provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the standard for ruling on a summary judgment motion is similar to that of a directed verdict if under governing law there can be but one reasonable conclusion. In addition the Supreme Court noted, in *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue as to any material fact." *Id.* Accordingly, material facts have been defined as those whose resolution will be determinative of the outcome. *See also Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.)*, 76 B.R. 297, 300 (Bankr. S.D.N.Y.1987).

An examination of the motion papers and accompanying documents before this Court indicates that no genuine dispute exists as to any material facts stated in the parties' respective local rule 13(h) statements. Rather the facts asserted by the parties are substantially similar. To the extent that there are facts in dispute, summary judgement is not defeated because these disputes do not represent "material issues of fact." *Id.* at 300. *Accord Shaw v. Jamaica Savings Bank (In re Cohen)*, 63 B.R. 104, 106 (Bankr.E.D.N.Y.1986).

### Conclusion

Accordingly, the Petitioner's motion for summary judgment is granted and Refco's cross-motion for summary judgment is denied. The funds in the Swiss Bank—N.Y. account are ordered to be turned over to the Petitioner for the purpose of administering the funds pursuant to the Swiss liquidation proceedings. The Petitioner's claim for damages is denied for failure to show cause for such relief. Also, the balance of the Petitioner's requests in its motion are denied in light of this Court's decision to turnover the funds.

The Petitioner is hereby directed to settle an order on five (5) days notice.