**RASHI TEXTILES, U.S.A., INC., Plaintiff,**

v.

**RHOMBERG TEXTIL GESELLSCHAFT M.B.H., OF AUSTRIA, Defendant.**

No. 93 Civ. 6048 (AGS).

United States District Court, S.D. New York.

June 28, 1994.

Marianne F. Murray, Rosner & Goodman, New York City, for plaintiff.

Stephen M. Harnik, Goldberg, Gelman & Harnik, New York City, for defendant.

**1052**

## Opinion and Order

SCHWARTZ, District Judge.

### DEFENDANT'S APPLICATION FOR COSTS AND ATTORNEY'S FEES

### INTRODUCTION

Rhomberg Textil Gesellschaft m.b.H. of Austria ("Rhomberg") has applied to this court for attorney's fees and costs pursuant to New York Civil Practice Law & Rules ("CPLR") Section 6212(e)[1] on the ground that Rashi Textiles U.S.A., Inc. ("Rashi") wrongfully attached its property on August 12, 1993. Rashi attached Rhomberg's checks and accounts receivable in order to secure a breach of contract claim Rashi had initiated in New York Supreme Court, New York County. Rhomberg alleges that because the attachment was vacated due to the existence of an ongoing foreign bankruptcy proceeding, the attachment was wrongful, and that Rhomberg is therefore entitled to fees and costs. For the reasons set forth below, we grant Rhomberg's motion.[2]

1.  CPLR § 6212(e) provides that, "[t]he plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property. Plaintiff's liability shall not be limited by the amount of the undertaking." N.Y.Civ.Prac.L. & R. § 6212(e) (McKinney 1980).
    Section 6212(b) defines an undertaking. It states:
    On a motion for an order of attachment, the plaintiff shall give an undertaking, in a total amount fixed by the court, but not less than five hundred dollars, a specified part thereof conditioned that the plaintiff shall pay to the defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property, and the balance conditioned that the plaintiff shall pay to the sheriff all of his allowable fees. The attorney for the plaintiff shall not be liable to the sheriff for such fees. The surety on the undertaking shall not be discharged except upon notice to the sheriff.
    *Id.* § 6212(b).
    The present action for fees and costs exceeds the amount of the undertaking. Consequently,

### BACKGROUND

Pursuant to an agreement dated July 23, 1990, Rashi, a New York corporation, became the exclusive sales representative for Rhomberg, a company that maintained its principal place of business in Dirnborn, Austria. Roger Rashi Aff. (Aug. 5, 1993) ¶ 4–5. The agreement provided that Rashi would receive 5% commissions on all invoices for textiles sold on behalf of Rhomberg in the United States, and was renewed yearly. *Id.*

On April 19, 1993, Rhomberg initiated a voluntary bankruptcy proceeding in Austria which, according to the bankruptcy laws of Austria, is known as a composition proceeding. The general goal of an Austrian composition proceeding parallels a Chapter 11 bankruptcy in the United States, namely to allow the bankrupt to continue to do business rather than to liquidate its assets. During a composition proceeding in Austria, the debtor continues to conduct business, but requires the trustee's approval for any actions that go beyond the ordinary course of business. Additionally, a composition proceeding in Austria requires that all pre-petition debts

Rhomberg has brought the claim under § 6212(e) rather than (b). Both subsections require an identical analysis with respect to determining whether the attachment was wrongful, and courts have not distinguished the respective sections on that point. Therefore, we rely on decisions which apply both subsections (b) and (e). *See Art Dep't Inc. v. D'Este*, 116 Misc.2d 123, 126, 455 N.Y.S.2d 210 (Sup.Ct.1982) (applying CPLR § 6212(e) to award damages in excess of undertaking for wrongful attachment).

2.  On April 18, 1994, Rhomberg also moved this court to compel the Sheriff to pay allegedly improperly deducted poundage and reasonable attorney's fees as a result of the attachment. Notice of Motion, Apr. 8, 1993. Rhomberg contends that Judge Conboy's order directing the Sheriff to release the levy against Rhomberg's property was to be without costs or fees for poundage. Stephen Harnick Aff. (Apr. 8, 1994) ¶ 3. Additionally, Rhomberg seeks to supplement its original request for attorney's fees from Rashi through this second motion. *Id.* ¶¶ 8–14. If this court does not grant damages against the Sheriff, Rhomberg requests that in the alternative, all damages included in the second motion be paid by the plaintiff Rashi. *Id.* at 7. For a detailed discussion of these damages, *see infra* at 1058–1059.

be partially paid and all post-petition debts be paid in full.

Rhomberg informed Rashi by facsimile of the Austrian composition proceeding on April 30, 1993. Gilbert Rashi Aff. (Nov. 4, 1993) ¶ 4. On May 3, 1993, Gilbert Rashi, president of Rashi Textiles, traveled to Austria and met with Rhomberg's management and Leonard Lindner ("Lindner"), the court-appointed trustee for the Austrian bankruptcy. *Id.* ¶ 6. On May 12, 1993, Rashi submitted to the Austrian bankruptcy court a list of debts that Rhomberg owed it. *Id.* ¶ 4. During the course of the composition proceeding on June 8, 1993, AKV, an Austrian company representing all creditors in the bankruptcy, contacted Rashi and explained that they would represent Rashi as well if Rashi consented to the representation and paid AKV for these services. Hearing Before Judge Kenneth Conboy, Nov. 15, 1993 [hereinafter "November 15 Hearing"] Tr. at 77. On June 14, 1993, Rhomberg agreed to pay Rashi approximately $51,000 to settle one of its post-petition debts. Gilbert Rashi Aff. (Nov. 4, 1993) ¶ 7.

Rhomberg withdrew its petition for the composition proceeding three days before the Austrian bankruptcy court placed Rhomberg into involuntary bankruptcy on June 18, 1993. In an Austrian involuntary proceeding, the trustee represents the debtor and the debtor's management loses the power to carry on its business. The trustee, however, may authorize management actions. By letter dated June 24, 1993, Rhomberg terminated its business agreement with Rashi on the basis of Rhomberg's ongoing financial difficulties. Roger Rashi Aff. (Aug. 5, 1993) ¶ 7. On July 1, 1993, Lindner released the $51,000 payment that Rhomberg had agreed to pay during the composition proceeding to Rashi.[3] Letter from Rhomberg (D. Pralon–Wissinger & Dr. L. Lindner) to Rashi Textiles of July 1, 1993.

On July 13, 1993, Rashi brought a breach of contract action in New York Supreme Court claiming $755,800 in damages as a result of Rhomberg's contract termination. Rashi Compl. ¶ 11. On July 29, 1993, AKV again informed Rashi that it would represent them in the bankruptcy if Rashi paid for this representation. November 15 Hearing Tr. at 74. On August 2, 1993, AKV filed a proof of claim on Rashi's behalf in the involuntary proceeding without Rashi's consent or knowledge. *Id.* at 47.

On August 12, 1993, Rashi obtained an ex parte order of attachment of Rhomberg's property in New York pursuant to CPLR Section 6201(1).[4] *See* Ex Parte Order of Attach. (Aug. 12, 1993). The ex parte order of attachment stated that the attached property were checks and accounts receivable made payable to Rhomberg in the amount of $288,400 and that Rashi was entitled to an attachment on the basis that Rhomberg was a foreign corporation not authorized to do business in the State of New York. *Id.* at 2. The order also stated that Rashi had provided an undertaking in the amount of $25,273.00. *Id.* at 2. The order required Rashi to pay $12,636.50 of the undertaking, including reasonable attorney's fees, if a court finally decided that Rashi was not entitled to the attachment. *Id.* The order stated further that Rashi must use the balance of the undertaking to reimburse the Sheriff for all of his allowable fees. *Id.* at 3.

On August 19, 1993, Rashi moved in Supreme Court, New York County, to confirm the order of attachment. *See* Affirmation in Supp. of Order to Show Cause to Confirm the Ex Parte Order of Attach. (Aug. 19,

---

**3.** We observe that, according to Rhomberg, the Austrian bankruptcy court could consider the $51,000 payment a preference that should be avoided. *See* November 15 Hearing Tr. at 44; *see also id.* at 23–25 (Judge Conboy noted that the Austrian bankruptcy court should consider whether $51,000 payment was a preference). Thus, as the issue is properly before the Austrian bankruptcy court, we will not address the issue here.

**4.** CPLR § 6201(1) provides:

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
> 1. The defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state. . . .
> N.Y.Civ.Prac.L. & R. § 6201(1).

1993). Rhomberg removed the action to the District Court for the Southern District of New York on August 26, 1993. Thereafter, Rashi requested that the District Court consider its motion to confirm the attachment. At a hearing before Judge Kenneth Conboy on October 4, 1993 to discuss the confirmation, Rhomberg raised the defense of bankruptcy to the motion to confirm the attachment.

On November 1, 1993, Judge Conboy ordered the parties to submit papers on the issue of whether the Austrian bankruptcy would adequately protect Rashi's claim for breach of contract damages. *See* Order (Nov. 1, 1993). At a hearing before Judge Conboy on November 15, 1993 (the "November 15 Hearing"), Rhomberg's expert witness testified that the involuntary bankruptcy proceeding in Austria would protect Rashi's claim. *See* November 15 Hearing Tr. at 47. The expert witness explained that Rashi could submit a claim in the Austrian involuntary proceeding and that it would receive equal treatment with other creditors under Austrian bankruptcy laws. *Id.* at 47–48.

On November 18, 1993, Judge Conboy issued an order vacating the attachment and recognizing Rashi's voluntary discontinuance of its motion to confirm the attachment under Federal Rules of Civil Procedure 41(a)(1). Notice of Voluntary Dismissal & Vacatur of Ex Parte Order of Attach. (Nov. 18, 1993) (Conboy, J.) ("Vacatur Order"). In the Vacatur Order, Rashi consented to vacatur of the attachment and the release of the attached funds to the trustee in bankruptcy in the Austrian proceeding. *Id.* at 4. The Vacatur Order stated that testimony provided at the November 15 Hearing established that Rashi's interests would be "fairly and equitably treated in the Austrian bankruptcy proceeding." *Id.* Subsequently, Judge Conboy directed the Sheriff to release the levy on Rhomberg's property on December 2, 1993. Order Directing Sheriff to Release Levy (Dec. 2, 1993) (Conboy, J.).

DISCUSSION

Two issues confront this court on Rhomberg's application. First, we must determine whether Rashi's attachment was wrongful because, as noted, CPLR Section 6212(e) en-

titles Rhomberg to attorney's fees only if it is finally decided that plaintiff was not entitled to an attachment of defendant's property. Second, in the event that this court finds that plaintiff was not entitled, Rashi has contested the amount of damages sought by Rhomberg. Therefore, we must assess whether the damages requested actually exceed the amount of fees and costs Rhomberg expended. We address these issues in turn.

A. Wrongful Attachment

CPLR Section 6212(e) provides for recovery of costs and fees where it has been finally decided that a plaintiff was not entitled to an attachment of a defendant's property. N.Y.Civ.Prac.L. & R. § 6212(e). A defendant is not required to prevail on the merits in order for the court to award damages. *See Fantasy Records, Inc. v. Travelers Indemnity Co.*, 54 Misc.2d 799, 283 N.Y.S.2d 473, 476 (N.Y.Civ.Ct.1967). Insofar as defendant's fees and costs were proximately caused by the attachment, defendant may recover such damages. *See Thropp v. Erb*, 255 N.Y. 75, 81, 174 N.E. 67 (Ct.App. 1930).

Subdivision (e) of CPLR Section 6212 was added in 1977 to make a plaintiff strictly liable for damages caused by a wrongful attachment. N.Y.Civ.Prac.L. & R. § 6212, Commentary by Joseph M. McLaughlin at 74. The provision recognizes that attachment is a "drastic provisional remedy" which, as a public policy matter, courts should discourage plaintiffs from pursuing where other remedies are available. *Id.; see also Thornock v. Kinderhill Corp.*, 712 F.Supp. 1123, 1132 (S.D.N.Y.1989) (under New York law attachment is harsh and, therefore, discretionary remedy); *Merrill Lynch Futures, Inc. v. Kelly*, 585 F.Supp. 1245 (S.D.N.Y. 1984) (attachment is harsh remedy not lightly to be granted); *Art Dep't Inc. v. D'Este*, 116 Misc.2d 123, 455 N.Y.S.2d 210 (Sup.Ct. 1982) (party resorting to attachment cannot escape penalty for improper use).

Under CPLR Section 6212(e), a defendant is entitled to fees and costs where, under the facts of the case, a New York court would find the underlying attachment to have been

wrongful. *See Victrix Steamship Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 716 (2d Cir.1987) (explaining that fee award is appropriate where a New York court would find wrongful attachment); *see also In re Koreag, Controle et Revision S.A.*, 130 B.R. 705, 716 (Bankr.S.D.N.Y.1991), *aff'd* (Knapp, J.), *rev'd on other grounds and remanded*, 961 F.2d 341 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992) (creditor is liable for damages flowing from wrongful attachment if court of competent jurisdiction rules that litigation of claims should have taken place in foreign proceeding).

The Second Circuit twice has addressed the issue of wrongful attachment in the context of an ongoing foreign bankruptcy proceeding. *See Victrix Steamship Co.*, 825 F.2d 709; *In re Koreag*, 130 B.R. 705. These cases thus guide us in the instant action.

Upon careful review of the circumstances surrounding Rashi's attachment, we find that *Victrix* expresses the controlling law. In *Victrix Steamship Co.*, Victrix, a Panamanian company, and Salen, a Swedish company, entered into a charter party whereby Salen chartered Victrix's vessel to ship goods. *Victrix*, 825 F.2d at 711. Salen subsequently went into bankruptcy in Sweden. *Id.* The following day, Salen informed Victrix that it would make no more payments on the charter party. *Id.* As a result, Victrix filed a claim in Swedish bankruptcy court against Salen's estate for the breach of contract. *Id.* Simultaneously, Victrix obtained an arbitration award in London and a money judgment. *Id.* Both the arbitration award and the money judgment were entered against Salen in England. *Id.*

Following these events, Victrix attached Salen's property in New York State Court and brought a breach of charter party action in federal court, in the Southern District of New York. *Id.* Salen moved to vacate the attachment and applied for attorney's fees and costs not exceeding the amount of the undertaking pursuant to CPLR Section 6212(b). *Id.* at 712.

The Second Circuit held that (1) a foreign bankruptcy proceeding is entitled to comity in U.S. federal court, and (2) the Swedish bankruptcy proceeding would fully protect Victrix's claim. *Victrix*, 825 F.2d at 715 ("Having already filed a claim in the Swedish bankruptcy proceeding, Victrix will enjoy at least the same protection and rights as Salen's other creditors."). The court further stated that it believed a New York court would have found the attachment wrongful under the circumstances. *Id.* at 716; *see also supra* note 1 (explaining similarities between CPLR Section 6212(e) and 6212(b)). Accordingly, the court awarded costs and fees pursuant to CPLR Section 6212(b). *Id.* (citing *Minskoff v. Fidelity & Casualty Co. of N.Y.*, 28 A.D.2d 85, 281 N.Y.S.2d 410 (1st Dep't 1967), *aff'd*, 23 N.Y.2d 706, 296 N.Y.S.2d 151, 243 N.E.2d 755 (1968)).

■ The facts of *Victrix* are substantially similar to those of the instant action. First, Rashi, like Victrix, attached property in New York after filing a claim in a foreign bankruptcy proceeding.[5] In *Victrix*, the court emphasized plaintiff's efforts to undertake two methods of securing a remedy at the same time. Victrix had both submitted a claim in the foreign bankruptcy and pursued an attachment in the United States. Rashi also has attempted to secure two remedies. Second, both foreign bankruptcy proceedings were found to be protective of the interests of the local creditor. Finally, both Rashi and Victrix, despite the ongoing foreign proceeding of which they had adequate notice and knowledge, aggressively pursued the enforcement of a judgment for contract damages in New York by resorting to the drastic remedy

---

**5.** Rashi submitted a list of debts owing to it from Rhomberg during the composition proceeding. While Rashi did not itself file a claim during the involuntary proceeding, Rashi did receive the $51,000 payment during that phase. November 15 Hearing Tr. at 40. At that time, Rashi was fully aware of the involuntary bankruptcy and that the payment was authorized by Lindner, the trustee in bankruptcy. Gilbert Rashi Aff. (Nov. 4, 1993) ¶ 10. We conclude, therefore, that Rashi submitted itself to the jurisdiction of the bankruptcy court in Austria in both phases of the bankruptcy. *See also* November 15 Hearing Tr. at 24 (Judge Conboy stating that Rashi submitted itself to jurisdiction of bankruptcy court in Austria by dealing with Lindner and accepting payments from him).

of attachment and moving to confirm an ex parte order of attachment. It is for these reasons that we conclude that a New York court would find that Rashi's attachment was wrongful, just as the Second Circuit found that a New York court would find Victrix's attachment wrongful.

Plaintiff relies on *In re Koreag* in support of its opposition to the present application. This reliance, however, is misplaced. In *In re Koreag*, the court declined to grant defendant attorneys fees and costs arising from an attachment, despite plaintiff's ex parte order of attachment of defendant's assets in New York while a foreign bankruptcy involving the defendant as a debtor was ongoing.[6] *In re Koreag*, 130 B.R. at 716. Unlike Rashi's action here, however, the plaintiff in *In re Koreag* neither brought a claim in the foreign proceeding nor received any benefit from the foreign bankruptcy. *See id.* at 709. Rashi erroneously argues that *In re Koreag* dictates that a court must issue a prior order directing plaintiff to litigate in the foreign proceeding as a prerequisite to finding plaintiff's attachment wrongful. Rather, by emphasizing the significance of plaintiff's pursuit of a single remedy, the court in *In re Koreag* stated, "[a]bsent a ruling by a court of competent jurisdiction directing [plaintiff] to litigate claims in Switzerland, [plaintiff] was fully entitled to pursue its remedies under American law." *Id.* at 716.

In addition to its reliance on *In re Koreag*, Rashi also argues that the attachment was not wrongful for four reasons. First, Rashi claims that it was not aware of the Austrian bankruptcy because it never received formal or official notice of the proceeding and was therefore entitled to pursue a remedy in the United States. Second, Rashi claims that the foreign bankruptcy would not protect its claim. Third, Rashi asserts that because it voluntarily withdrew its motion to confirm the attachment order, the attachment may not be viewed as wrongful. Finally, Rashi contends that the November 15 Hearing before Judge Conboy decided that only from that day forward would the bankruptcy proceeding in Austria protect Rashi's claim. Thus, according to Rashi, because the attachment predated the hearing, it was not wrongful because there had been no earlier finding that Rashi's claim would be protected in the foreign bankruptcy.

These arguments are unpersuasive. The November 15 Hearing answers Rashi's first argument. In that proceeding, Judge Conboy found that Rashi knew of the bankruptcy, stating that Rashi's assertion of unawareness was simply "untenable." The court also found that because Rashi had dealings with Lindner as the trustee and had received a payment from Lindner who was acting in his duties as trustee, Rashi had submitted itself to the jurisdiction of the bankruptcy court in Austria. As to Rashi's second argument, it is clear from the November 15 Hearing, through the testimony of Rhomberg's expert witness, that the Austrian bankruptcy would protect Rashi's claim and would afford Rashi due process of law.

Rashi's latter two defenses to Rhomberg's application for fees and costs are similarly without merit. It is irrelevant that Rashi consented to the withdrawal of the motion to confirm the attachment order. Rather, Judge Conboy clearly decided that based on the expert testimony at the November 15 Hearing the attachment should be vacated whether or not Rashi consented to the order. The vacatur of an order of attachment has been considered as a final decision that enti-

---

**6.** In *Koreag*, the plaintiff attached the defendant's property after the initiation of a Swiss bankruptcy. *See* 961 F.2d at 346. After Koreag, the trustee, moved to dismiss the attachment, the district court held that the trustee should initiate an ancillary proceeding in the United States pursuant to 11 U.S.C. § 304. *Id.* As a result, Koreag petitioned the U.S. bankruptcy court for relief ancillary to the foreign proceeding. *Id.* Koreag also petitioned to have the attached funds turned over to the Swiss insolvency authorities and to enjoin plaintiff from reaching any of the debtor's funds in U.S. accounts. *Id.*

On appeal, the Second Circuit held that the attached funds should not be turned over to the bankruptcy estate prior to a finding that the funds were in fact the debtor's property. *Id.* at 348. The court did not disturb the finding that, assuming the funds were property of the estate, the attachment was not wrongful. Thus, the court did not actually reach the issue of whether the attachment of the defendant's property was wrongful. In the instant action, there is no dispute that the attached funds are included in Rhomberg's bankruptcy estate. Vacatur Order at 3–4.

tles a defendant to fees and costs pursuant to CPLR Section 6212(e). *See Roth v. Pritikin,* 787 F.2d 54, 58–59 (2d Cir.1986) (attorney's fees and costs awarded when court vacated attachment).

Likewise, Judge Conboy's decision to vacate the attachment did not decide prospectively that Rashi's claim would be protected in the Austrian bankruptcy. Rather, the order established the finding that Rashi was never entitled to an attachment because of the existence of a foreign bankruptcy proceeding which protected Rashi's claim.

Public policy considerations also compel our finding of wrongful attachment. First, American courts have granted comity to foreign proceedings, particularly in bankruptcy where the goal is to equitably distribute all of the debtor's assets to the creditors. *See Hilton v. Guyot,* 159 U.S. 113, 202–03, 16 S.Ct. 139, 158, 40 L.Ed. 95 (1895) (comity is granted to foreign proceeding where there has been full unprejudiced trial abroad); *Drexel Burnham Lambert Group, Inc. v. Galadari,* 777 F.2d 877, 880 (2d Cir.1985) (U.S. courts extend comity to foreign bankruptcies as long as no injustice to U.S. citizens); *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255, 1259 (S.D.N.Y. 1979) ("comity is to be accorded a decision of a foreign court as long as that court is a court of competent jurisdiction and as long as the laws and public policy of the forum state and the rights of its resident are not violated.").[7]

Second, a U.S. corporation that does business with a foreign corporation must take the responsibility to be familiar with the laws of that corporation's country. The Supreme Court has held that when a person does business with a company from a different nation, that person implicitly accepts the rules of the foreign forum. *See Canada*

*Southern Railway v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883). The Court stated, "[i]t follows ... that anything done at the legal home of the corporation, under the authority of such law, which discharges it from liability there, discharges it everywhere." *Id.* at 537–38, 3 S.Ct. at 370.

Rashi should have been more careful with its dealings with Rhomberg, an Austrian concern. Rashi knew of the foreign bankruptcy but did not educate itself on the technicalities of Austrian bankruptcy law. If Rashi had researched Austrian law, Rashi would have learned that the Austrian proceeding provided for the desired relief and that Rashi would have had no need to pursue the remedy of attachment in New York.

Accordingly, we grant Rhomberg's application for attorney's fees and costs and turn now to calculating the approximate damage caused by the wrongful attachment.

**B. Damages**

Rhomberg has applied for damages through three motions. The first request was by virtue of an application for attorney's fees and costs pursuant to CPLR § 6212(e) on November 24, 1993 for wrongful attachment of its property. Rhomberg filed a second notice of motion on April 8, 1994 informing this court that it would move on April 18, 1994 for further damages in addition to those previously requested for the wrongful attachment. Finally, Rhomberg requests additional attorneys fees due to the costs incurred responding to the Sheriff's cross-motion for poundage.[8]

**1. Damages Included in November 24, 1993 Application for Fees and Costs Pursuant to CPLR § 6212(e)**

Rhomberg outlined its requested damages in the affidavit of Stephen Harnick dated

---

**7.** We note that in order to be granted comity, a foreign proceeding must not violate U.S. standards of fairness. *See Banque de Financement v. First Nat. Bank of Boston,* 568 F.2d 911, 921 (2d Cir.1977) (U.S. court is to guard against obliging American creditors to participate in foreign proceedings which conflict with U.S. standards of equality). Judge Conboy's findings at the November 15 Hearing clearly establish the fairness

of the Austrian bankruptcy proceeding in accordance with U.S. standards of due process.

**8.** The Sheriff has also cross-moved to have poundage fixed in the amount of $12,636.92 (the amount of the undertaking specified in the attachment order). Notice of Cross–Motion (Apr. 25, 1994). The Sheriff additionally moves for an order directing the parties to pay this sum. *Id.* We consider the Sheriff's motion *infra* at 1059.

November 24, 1993. *See* Stephen M. Harnick Aff. (Nov. 24, 1993) ¶¶ 10–28. Rashi claims that even if this court decides to award attorney's fees and costs, the defendant's request exceeds the amount expended for the attachment action. *See* Marianne F. Murray Aff. (Dec. 3, 1993) ¶¶ 18–22. The total damages requested by Rhomberg in the first application amounts to $43,950.41. Of this amount, $32,360.00 is for attorney's fees and $11,590.41 for costs. While the attorney's fees are for Mr. Harnick's firm's services, the costs are for payments to Walter Friedrich, an expert on Austrian law who testified at the November 15 Hearing and to Victor Rhomberg, a consultant to the trustee in bankruptcy.

■ Rashi alleges first that the attorney's fees are disproportionate to the services rendered. Marianne Murray Aff. ¶ 19. Rashi contends that because the defendant's attorneys attended only one status conference, submitted one letter of substance, filed one ten page memorandum of law, and prepared for and attended a three hour hearing on the motion to vacate, that the fees Rhomberg presented are too high. *Id.* Second, Rashi claims that Rhomberg double-billed. According to Rashi, Rhomberg's American counsel (Stephen Harnick) claimed to be an expert in Austrian bankruptcy law. *See id.* ¶ 20 (citing Stephen Harnick Aff. (Nov. 24, 1993) ¶¶ 24–25). Yet, Rhomberg also hired Walter Friedrich to provide expert testimony at the November 15 Hearing. Rashi claims that Rhomberg only needed to pay one of these experts. *Id.*

Finally, Rashi claims that the trustee's consulting contract with Victor Rhomberg, for which Rhomberg has claimed to be connected to the attachment proceeding and therefore included in the costs, was not primarily for services related to the matter because the contract provided for a flat fee. *Id.* ¶ 21. Additionally, Rashi contests the inclusion of Victor Rhomberg's costs for the trip to New York for the November 15 Hearing because he was not called as a witness. *Id.* Rhomberg, however, explained that these costs for Victor Rhomberg's New York trip were not included in the requested damages. Stephen Harnick Aff. ¶ 27. Further,

the expenses show the specific number of hours that Victor Rhomberg spent on the defense of Rashi's action. *Id.*

We find that Rhomberg's fees and costs are not disproportionate to services rendered in relation to the attachment and that these damages are adequately supported and documented. Therefore, we award Rhomberg's damages application. Because Rashi's arguments to reduce the damages are not compelling, we grant Rhomberg's first request for $43,950.41 in its entirety.

2. Damages Included in April 18, 1994 Motion

Rhomberg makes essentially three more claims for damages in the second motion. *See* Defendant's Notice of Motion (Apr. 8, 1994). The first claim is for poundage retained by the Sheriff upon releasing collected funds, the second is for attorney's fees from the Sheriff, and the third is for additional attorney's fees and costs from Rashi.

a. Poundage

■ First, Rhomberg contends that the Sheriff withheld poundage ($4,456.35) after the Sheriff had released approximately $88,000 pursuant to Judge Conboy's release order. While the attachment order had allowed the Sheriff to attach up to $252,727.85, the Sheriff had actually levied on over $400,000 and collected the $88,000. *See* City Sheriff's Mem. of Law in Supp. of Cross–Motion for Statutory Poundage at 4. Rhomberg argues that the Sheriff retained the poundage in violation of Judge Conboy's release order and should remit the poundage amount to Rhomberg, or else be held in contempt. Defendant's Notice of Motion ¶ 1. In the alternative, Rhomberg requests that these damages be assessed against Rashi, if this court does not find the Sheriff liable for the retained poundage. *Id.* at 7.

The release order stated, "ORDERED that the sheriff of the City of New York release, without costs or fees for poundage, any levy effected pursuant to the order of attachment and deliver to . . . defendant any funds which the sheriff has received pursuant to the levy." Rhomberg interprets this lan-

guage to mean that the Sheriff should have released the levy and not withheld the poundage. *Id.* ¶ 4. While Rhomberg correctly notes the ambiguity of the order's language, Rhomberg's interpretation of the phrase is inaccurate. Rather, the language means that the Sheriff should release the levy minus an amount for poundage. The Sheriff has accordingly complied with the release order because he retained some poundage but released the collected funds.

This second interpretation is correct because the ex parte order of attachment requires the plaintiff to pay Sheriff's costs if there is a final determination that the attachment was wrongful. Ex Parte Order of Attach. at 3. As a result, Rashi, not the Sheriff, must bear the Sheriff's fees due to the wrongful attachment. Therefore, we grant Rhomberg's alternative request that the retained poundage of $4,456.35 be borne by Rashi.

■ Additionally, we find that the Sheriff's cross-motion to fix poundage should be granted in the amount of $12,636.50 [9] pursuant to New York law.[10] The Sheriff is entitled to poundage even though the order of attachment was vacated. *See Knoll v. Knoll,* 78 Misc.2d 710, 358 N.Y.S.2d 92, 93 (Sup.Ct. 1974) (explaining that where parties agree to vacate attachment, sheriff is nevertheless due poundage). New York law states that, "[w]here an order of attachment is vacated or set aside, the sheriff is entitled to poundage upon the value of the property levied upon, not exceeding the amount specified in the order of attachment, and the court may order the party at whose instance the order of attachment was granted to pay the same to the sheriff...." N.Y.Civ.Prac.L. & R. § 8012(b)(3).

While the general rule is that the Sheriff is entitled to receive poundage only upon amounts actually collected, *see Estate of Pearson,* 72 Misc.2d 995, 340 N.Y.S.2d 119 (Sur.Ct.1973), CPLR Section 8012(b)(3) makes an exception to this rule. *Id.* Even if

the Sheriff has not collected all of the amounts levied upon, the Sheriff may receive poundage if the order of attachment has been vacated. *Id.* Thus, because the Sheriff levied on over $400,000 while collecting only $88,000, the Sheriff is entitled to poundage limited by the amount of the undertaking specified in the attachment order.

Therefore, the Sheriff's request to fix poundage in the amount specified in the attachment order is justified. Furthermore, Rashi must pay the Sheriff poundage because Rashi was the "party at whose instance the order of attachment was granted." However, because the Sheriff retained $4,456.35 as poundage when he released the collected funds, and Rashi will pay this amount to Rhomberg, Rashi is liable to the Sheriff only for the difference between the amount of the undertaking reserved for Sheriff's costs ($12,363.50) and the amount retained by the Sheriff ($4,456.35), which amount is $8,180.15.

b. Application for Attorney's Fees from Sheriff

Rhomberg's second additional claim for damages is that the Sheriff should pay attorney's fees in the amount of $1,270.00 for the preparation of the second motion. Defendant's Notice of Motion ¶ 7. Alternatively, Rhomberg requests these costs from Rashi if this court does not find the Sheriff liable for these damages. *Id.* at 7. These fees were proximately caused by the attachment and should be included in Rhomberg's CPLR § 6212(e) application. Thus, Rashi should bear these attorney's fees.

c. Application for Additional Fees and Costs from Rashi

■ In addition to the costs requested from the Sheriff, Rhomberg also asks that the fees incurred since the filing of its first application for fees and costs should be incorporated into the total damages against Rashi.

---

9. The Sheriff's request was to fix poundage in the amount of $12,636.92. However, the attachment order states that the amount of the undertaking reserved for the Sheriff's costs is the total amount of the undertaking, $25,273.00, less $12,-

636.50 which equals $12,636.50. *See* Ex Parte Order of Attach. at 2–3.

10. *See supra* note 8 (explaining that Sheriff cross-moved to fix poundage).

*Id.* ¶¶ 8–14. Specifically, Rhomberg contends that since November 24, 1993, it has incurred $8,001.50 in fees relating to the attachment and $546.00 in costs. Rhomberg requests that this total, $8,547.50, be added to its first request of $43,950.41. We agree with Rhomberg that these damages should be assessed against Rashi.

3. Attorney's Fees Included in Rhomberg's Reply to Sheriff's Cross–Motion to Fix Poundage

Rhomberg requests that the Sheriff pay an additional $860.00 in legal fees to cover Rhomberg's costs in responding to the Sheriff's cross-motion to fix poundage. Stephen M. Harnick Reply Aff. (May 6, 1994) at 4. These damages, however, were proximately caused by the wrongful attachment. Consequently, Rhomberg should have requested these costs from Rashi rather than the Sheriff. Thus, we deny this application.

4. Damages Conclusion

We find that both the retained poundage and the additional fees and costs, with the exception of the $860.00, should be assessed against Rashi. These additional requests bring the total of Rhomberg's damages to $58,224.26, which we order Rashi to pay to Rhomberg as a result of Rashi's wrongful attachment of Rhomberg's property. Additionally, we grant the Sheriff's cross-motion for poundage and direct Rashi to pay to the Sheriff $8,180.15 which is the difference between the undertaking specified in the attachment order and the amount retained by the Sheriff upon release of the collected funds.

SO ORDERED.