In the Matter of the ARBITRATION BETWEEN CONTICHEM LPG, a division of Contigroup Companies, Inc., Petitioner,

and

**PARSONS SHIPPING LTD.,**
Respondent.

No. 99 CIV 10493.

United States District Court,
S.D. New York.

Oct. 24, 2001.

Anthony J. Mavronicolas, Hill, Rivkins & Hayden, L.L.P., New York City, for petitioner.

Leo T. Crowley, Winthrop, Stimson, Putnam & Roberts, New York City, for intervenor-plaintiff.

### DECISION AND ORDER

MARRERO, District Judge.

Respondent Parsons Shipping Ltd. ("Parsons") moves for reimbursement of the costs it sustained following a temporary restraining order (the "TRO") improperly sought and granted on behalf of petitioner Contichem LPG ("Contichem"). Contichem opposes the motion on several grounds discussed below. For the reasons indicated, the motion is granted.

## FACTS AND PROCEDURAL HISTORY

Contichem unknowingly chartered from Parsons an apparently unseaworthy ship, the M/V World Rainbow (the "Rainbow"). Because of delays in shipping caused by Rainbow's technical and maintenance deficiencies, Contichem incurred damages that it estimates at approximately $3 million. While the underlying merits of Contichem's claims against Parsons were submitted to an arbitration panel in London by the High Court of London (the "High Court"), Contichem sought injunctive relief in various locales throughout the world. One such venue was in this Court.

On October 13, 1999, Judge McKenna of this Court issued Contichem's application for a TRO and order of attachment against Parsons pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 6201, 6210 and 7502(c). The TRO was meant to preclude certain entities, among them Unibank S.A. ("Unibank") and Den Norske Bank ASA ("DNB"), from transferring any of Parsons's funds or assets, pending an order of maritime attachment and garnishment. The TRO was granted on an ex parte basis and conditioned on Contichem's posting a $100,000.00 undertaking.

Contichem served Unibank the following day with notice of the TRO, but it restrained no property because Parsons's Unibank account in question had no fund balance at the time. After such service, however, Contichem transmitted to Unibank certain money it then owed Parsons, which became subject to the TRO.

On October 27, 1999, and following a hearing, Judge McKenna issued a decision (the "Decision") denying Contichem's motion for a preliminary injunction and order of attachment and granting Parsons's motion to vacate the TRO which the Court characterized as "invalidly" obtained. *See In re Contichem LPG*, No. 99 Civ. 10493, 1999 WL 977364, at *2 (S.D.N.Y. Oct. 27, 1999). On appeal taken by Contichem, the Second Circuit upheld the Decision, concluding that the TRO was an attempt by Contichem to avoid maritime law doctrine which holds that an attachment can only reach funds already held by a garnishee at the time of its granting. *See ContiChem LPG v. Parsons Shipping Co., Ltd.*, 229 F.3d 426 (2d Cir.2000).

More recently, on April 5, 2001, the London arbitration panel decided in favor of Contichem on some of its claims, while rejecting others. The panel held that Contichem did not act "wrongfully, maliciously, [or] in bad faith" in attempting "to secure their claim", and the panel denied demurrage for Parsons. Letter to the Court from Petitioner's Counsel, dated Apr. 18, 2001, Ex. A at 3.

Parsons now claims to have incurred a total of $119,576.13 in costs and damages as a result of the issuance of the TRO, outlined as follows: (1) litigation costs in moving to vacate the TRO paid to Parsons's counsel totaling $68,759.76; (2) estimated further litigation costs of approximately $5,000.00 in connection with this motion; (3) $45,441.37 in attorney's fees paid on behalf of DNB, the intended recipient of Parsons's restrained funds, which Parsons was required to pay in accordance with a loan agreement signed with DNB (DNB's counsel in London and New York intervened in the matter on DNB's behalf); and (4) $375.00 in court fees related to the current litigation.

## DISCUSSION

### A. MALICE

Parsons argues that an undertaking set by a court for granting a TRO is governed by CPLR § 6313(c), which in turn cites to section 6312(b). Section 6313(c) provides that "[p]rior to the granting of a temporary restraining order the court may, in its

discretion, require the plaintiff to give an undertaking in an amount to be fixed by the court, containing terms similar to those set forth in subdivision (b) of rule 6312, and subject to the exception set forth therein." CPLR § 6313(c). Section 6312(b) states, in relevant part, that "prior to the granting of a preliminary injunction, the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that he or she was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction...." CPLR § 6312(b).

Parsons notes that these CPLR provisions do not require a finding of malice on the part of the party obtaining the TRO, only that that party was not entitled to it. Parsons also claims that since there is only a broad mention of damages sustained on account of the improperly issued TRO, such damages should include attorney's fees. In opposition, Contichem argues that Parsons is subject to a restraining order issued by the High Court which bars Parsons from further proceedings in New York. According to Contichem, the claims asserted by Parsons for damages were filed as a counterclaim in the London arbitration, and this Court should reserve judgment.

The London arbitrators have released their decision which does not even address the issue of reimbursement for attorney's fees related to the improper issuance of a TRO. Therefore, assuming this Court was precluded from addressing this issue because of the High Court's injunction, or inhibited by any issues of comity in this decision, it is no longer so constrained.

## B. *STANDING*

Contichem asserts that the funds restrained in Parsons's account at Unibank actually belonged to DNB and not to Par-

sons and that Parsons has no standing to sue for damages herein. Contichem cites *Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341 (2d Cir.), cert. denied, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992) and *Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H. of Austria*, 857 F.Supp. 1051 (S.D.N.Y.1994) to support the proposition that Parsons cannot claim damages for the improper restraint of another party's property. Both of these cases, however, deal with bankruptcy law and stand for the principle that "attached funds should not be turned over to the bankruptcy estate prior to a finding that the funds were in fact the debtor's property." *Rashi*, 857 F.Supp. at 1056 n. 6.

The situation now before the Court is not analogous, and Contichem has cited no authority to establish that Parsons cannot claim damages even if the restrained property was, in fact, DNB's property. This is particularly true when, as here, Parsons was contractually liable to DNB for the costs DNB incurred in obtaining release of its assets. Moreover, while DNB may have had a valid contractual claim to the funds, the proceeds—at the time they were restrained—were still held in a bank account that belonged to Parsons. Theoretically, until the funds were actually transferred out of the account on Parsons's authority, they remained in Parsons's possession and control, and Parsons retained a possessory interest in the property that was effectively curtailed by the TRO.

Contichem cites *Cross Props., Inc., v. Brook Realty Co.*, 76 A.D.2d 445, 430 N.Y.S.2d 820 (App.Div.2d Dept.1980), contending the case holds that "the remedy under CPLR 6315 ... is for the party wrongfully enjoined." Contichem Brief in Opposition, dated Feb. 23, 2001 ("Conti-

chem Brief"), at 4. Parsons, however, was one of the parties wrongfully enjoined. The fact that the funds affected were merely held in Parsons's bank account in custody for DNB, as Contichem notes, is inapposite.

The very passage cited by Contichem from *Cross* tends to disprove Contichem's contention, as it allows a party wrongfully enjoined to "recover only damages and costs 'which may be sustained by reason of the injunction.'" *Cross*, 430 N.Y.S.2d at 828 (citing CPLR § 6312(b)). Furthermore, the *Cross* court explicitly sustained the recovery of attorney's fees, stating that "counsel fees are recoverable as one element . . . as it relates to the preliminary injunction. . . ." *Id.* at 828. Here, damages and costs, including attorney's fees, sustained on account of the injunction are in fact all that Parsons seeks in its motion.

## C. *RES JUDICATA*

Judge McKenna refused to "decide any other issues" and concluded that the Decision was "without prejudice to any appropriate attempts by petitioner to obtain security." *In re Contichem LPG*, 1999 WL 977364, at *3. Contichem interprets, as res judicata, the Court's refusal to address the request for damages, fees or any other issues raised by Parsons and DNB grounded on the granting of the TRO and argues that Parsons is now precluded from bringing the instant motion.

■ Even assuming that this motion centers on the same transaction discussed in the Decision, res judicata takes effect only "when a final judgment has been entered on the merits of a case." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d. Cir.1997) (citing *Securities and Exch. Comm'n v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996)). Here, the proceeding before Judge McKenna did not consider the mer-

its of Parsons's claim in connection with damages eligible to be paid out of the security Contichem had posted. As that issue was not litigated, there is no final adjudication on the merits entitled to res judicata effect as between the parties here that would bar Parsons's claim.

## D. *FINALITY*

■ Contichem argues that, according to CPLR § 6312, liability on an undertaking which is posted as a condition for the issuance of injunctive relief attaches only upon a "final determination", not just upon the dissolution of the injunction. According to case law and commentary cited by Contichem, the vacatur of a preliminary injunction merely indicates a plaintiff's failure to make the requisite showing of probabilities in support of the claim for equitable relief. Contichem's argument fails for two reasons.

First, the law Contichem cites relates only to grants of injunctive relief that are later vacated because of an insufficient showing of necessity. The motion now before the Court, however, was brought, not on account of a TRO vacated for insufficiency, but rather for damages resulting from a TRO improperly sought and granted as a matter of law in the first instance. As stated in CPLR 6312(b), a plaintiff, if it is ultimately determined that it was not entitled to an injunction, will pay to a defendant all damages and costs which may be sustained by reason of the injunction. *See* CPLR § 6312(b). It has been clearly determined in the case at bar that Contichem was not entitled to the TRO, regardless of the underlying merits of Contichem's claim against Parsons.

In addition, Contichem argues that "liability [is] contingent upon the posting of an undertaking as a condition precedent to the issuance of a temporary restraining order." Contichem Brief at 9. Contichem

further maintains that Judge McKenna ordered it to post an undertaking only as an afterthought to his issuance of the TRO, and not as a "condition precedent." *Id.*

This contention is parsing too much from the language of the statute. Judge McKenna merely noted that the petitioner would submit an undertaking; New York law makes an undertaking mandatory. Judge McKenna followed the law, and whether or not the undertaking was his foremost concern when granting the TRO, it is duly recorded in the October 13, 1999 order. Absent some ambiguity in this document, as with any document, this Court will decline to search for any meaning beyond the clear implications of the text.

Contichem relies upon *Doran & Assocs., Inc. v. Envirogas, Inc.*, 112 A.D.2d 766, 492 N.Y.S.2d 504 (App.Div. 4th Dept.), *appeal dismissed*, 66 N.Y.2d 758, 497 N.Y.S.2d 1028, 488 N.E.2d 131 (1985), to support its fallback argument that the quantum of recoverable damages is limited to the amount of the undertaking. The *Doran* court, in dealing with a TRO granted under CPLR § 6313(c), stated that "[a]bsent a showing of plaintiff's bad faith under circumstances amounting to malicious prosecution, damages resulting from an improperly issued temporary restraining order are limited to the amount of the undertaking required to be filed." *Id.* at 506. Under this authority, since the undertaking filed in this case was $100,000.00, any award granted to Parsons by this Court would have to be limited to that sum, notwithstanding any accumulation of interest.

In response, Parsons "reserves its rights with respect to claiming malicious use of a TRO and attachment and for any amounts in excess of $100,000 by way of an independent action outside CPLR Rule 6315." Parsons's Reply Memorandum, dated Mar. 2, 2001, at 10. The issues of whether Contichem acted maliciously in seeking the TRO and what effect the London arbitration panel's findings pertaining to Contichem's state of mind may have on the parties' remaining disputes, are not before this Court in connection with the instant motion. The Court therefore declines to address them, or to rule on whether or in what forum Parsons may pursue an independent action in this regard.

## E. DAMAGES

█ Contichem disputes the notion that the vacatur of a TRO, initially issued in contemplation of a pending hearing on a related motion for an order of attachment, gives rise to a sustainable claim for damages. The Court finds no support in the law for this argument. In fact, several CPLR provisions expressly establish liability for damages arising from an improper levy.

Rule 6312(b), for example, requires that plaintiff provide security so that in the event "it is finally determined that he or she was not entitled to an injunction [or to a TRO by application of rule 6313(c)] [plaintiff] will pay to the defendant *all damages and costs* which may be sustained by reason of the injunction." CPLR § 6312(b) (emphasis added). There is no indiction in this language that the damages contemplated are limited to wrongful restraints on property. Indeed, the text explicitly refers to *all* damages sustained by reason of the injunction or the TRO, and such restraints are not always directed at the use of property. *See Cross Properties*, 430 N.Y.S.2d at 820.

CPLR § 6210 is also instructive in this regard. It states that "[u]pon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in subdivision (b) of

section 6214." CPLR § 6210. Section § 6214(b) in turn provides that "a plaintiff who has specified personal property or debt to levied upon in a notice served with an order of attachment shall be liable to the owner of the property or the person to whom the debt is owed, if other than the defendant, for any damages sustained by reason of the levy." CPLR § 6214(b).

Contichem argues that the property affected by the TRO did not belong to Parsons in the first place and thus that Parsons lacks sufficient interest to press a claim for damages. However, nothing in Article 63 of the CPLR demands that any property wrongfully restrained must belong to the particular defendant claiming damages. Rather, section 6315 specifies that "[t]he damages sustained by reason of a preliminary injunction or temporary restraining order may be ascertained upon motion...." CPLR § 6315.

In response, Contichem cites *Provisional Protective Comm. v. Williams*, 121 A.D.2d 271, 503 N.Y.S.2d 47 (App.Div. 1st Dept.1986). There, a plaintiff was granted a TRO pending an attachment of the defendant's property. When the court later found the TRO and attachment to be unwarranted, the defendant moved for damages, which the New York Supreme Court awarded. The Appellate Division reversed. Contichem quotes the court's finding that "[u]nder these circumstances, the attorney's fees sought by defendants are not within the ambit of damages recoverable under Section 6212." *Id.* at 49.

The *Williams* case is not as dispositive as Contichem asserts. First, unlike the present case, the TRO granted in *Williams* was properly sought and applied; it merely failed on the merits of the case when plaintiffs were unable to prove defendants' intent to defraud creditors. Second, as the Appellate Division noted, the attorney's fees might not be recoverable under CPLR § 6212—but there is nothing that says defendants cannot simply recover such damages under an interpretation of CPLR § 6210.

Contichem further cites *Kidder, Peabody & Co. Inc. v. IAG Int'l Acceptance Group N.V.*, 28 F.Supp.2d 126 (S.D.N.Y. 1998), *aff'd*, 205 F.3d 1323, 1999 WL 1254512 (2d Cir.1999), to reinforce the *Williams* holding and to support the notion that sound policy reasons exist for limiting the availability of damages in New York cases where an attachment is overturned. But Judge Haight's conclusions in *Kidder* about the policy reasons for limiting liability for improper enjoiners like Contichem are also not exactly on point.

In *Kidder*, there was an issue as to whether there had actually been any property attached by plaintiff, and the court held that in fact there had not been. Therefore, Judge Haight held that there could be no cause of action for damages, and this conclusion was supported by sound policy rationale. *See id.* at 144–45. In the present case, if this Court holds that the funds subjected to the TRO can be considered to have been Parsons's property, then *Kidder* is inapposite. And once again, the damages at issue in *Kidder* were sought pursuant to CPLR § 6212, not §§ 6210 or 6213.

Contichem disputes that the cases cited by Parsons in support of its motion for damages serve as authority for the proposition that attorney's fees may be awarded following vacatur of an improper TRO, albeit with limitations. In *Eisen v. Post*, 15 Misc.2d 59, 179 N.Y.S.2d 691 (N.Y.Sup. Ct.1958), the court allowed attorney's fees so long as they did not exceed the sum posted in the undertaking. In both *Eisen*, 179 N.Y.S.2d at 694, and *Weisner v. 791 Park Ave. Corp.*, 11 A.D.2d 656, 201 N.Y.S.2d 985 (App.Div. 1st Dept.1960), attorney's fees were recoverable when in-

curred not in resolving the underlying issues of the case, but merely challenging the TRO. The summary decision in *Hanley v. Fox*, 90 A.D.2d 662, 456 N.Y.S.2d 251 (App.Div. 3rd Dept.1982), while perfunctory, also appears to allow for attorney's fees.

Several more recent cases are more on point and add greater support to Parson's entitlement to damages. In *A & M Exports, Ltd. v. Meridien Int'l Bank Ltd.*, 222 A.D.2d 378, 636 N.Y.S.2d 35 (App.Div. 1st Dept.1995), the plaintiff also obtained a TRO to prohibit the transfer of funds maintained by the defendant in a bank. The TRO was later vacated; no order of attachment was ever granted; and the defendant sued for damages, for both the amount of the undertaking and for all attorney's fees.

The court stated that the "[TRO] provided for in CPLR 6210 is issued pursuant to CPLR 6313(a), and any damages sustained by reason of the operation of the order are ascertained in accordance with the provisions of CPLR 6315, not by reference to CPLR 6212(e)." *Id.* at 36. According to the court, "[t]he summary procedure of CPLR 6315 permits the court that imposed the restraint on the transfer of a defendant's assets ... to fix damages resulting from that restraint." *Id.* The court specified further that "[s]uch an award may include counsel fees incurred in connection with an 'erroneously granted temporary restraining order', where supported by the record." *Id.* In this case, since Judge McKenna issued the TRO pursuant to CPLR § 6210, *A & M Exports* seems to be germane and instructive.

In *Louie v. David Chiu Place Rest., Inc.*, 261 A.D.2d 150, 689 N.Y.S.2d 476 (App. Div. 1st Dept.1999), plaintiff moved for a pre-action order of attachment, pursuant to CPLR §§ 6201 and 6210, by order to show cause. The court granted what was effectively a temporary restraining order that restricted defendants from transferring any assets. When the TRO was vacated, defendants moved for recovery of attorney's fees. The lower court held that because the defendants had defeated a motion for an attachment, there was no wrongful attachment for which relief could be granted under CPLR § 6212.

The appellate court held that while the lower court had been correct in its assessment of the law, it had erred in examining remedies available only under CPLR § 6212, when in fact defendants were entitled to relief under CPLR § 6313. *Id.* The court explained that:

> CPLR 6212 and 6213 are parallel statutory sections designed to mitigate the risks of different types of preaction restrictions on a defendant's property. CPLR 6212 allows foreclosure on an undertaking only after an order of attachment has been issued and then determined to have been wrongful. CPLR 6213 provides analogous relief for a wrongfully issued temporary restraining order. The two remedies are independent of one another.... Thus, regardless of the unavailability of CPLR 6212 relief in a situation where no attachment was ever ordered, pursuant to CPLR 6213 defendants may seek to recoup losses caused by an improper ex parte restraining order, including counsel fees.

*Id.* at 477 (citing *A & M Exports*, 636 N.Y.S.2d at 36). In this case, as in *A & M Exports*, the court declined to determine exactly how much the plaintiff would owe the defendant, and remanded the case for a hearing on the issue. *See id.*

The foregoing state case law provides sufficient authority to persuade this Court that attorney's fees and related costs associated with a temporary restraining order improperly sought pursuant to CPLR § 6210 may be recoverable under CPLR

§ 6312. Having reviewed the documentation and other materials Parsons submitted in support of the amount of damages totaling $119,576.13 it alleges it incurred in connection with this matter (*see* Affidavit of Armand Pare, sworn to Feb. 8, 2001, ¶¶ 6–10 and Exs. F–I), the Court considers that the claims are sustained and the amounts reasonable.[1] Accordingly, the Court awards a total of $100,000.00 to Parsons in damages.

### CONCLUSION AND ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion for damages filed by Respondent Parsons Shipping Ltd. is granted; and it is further

**ORDERED** that Petitioner Contichem LPG pay Parsons One Hundred Thousand Dollars ($100,000.00), representing the amount of the undertaking it posted as security related to this action.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

---

1. The Court notes that billing rates for the law firm's partners range from $230 to $285 per hour and that the partner who did the majority of the work was billed at either $235 or $250 per hour. *See id.,* Ex. F. In addition, Parsons has represented that the fees of London counsel break down to approximately $255 per hour. *See id.,* Ex. H. The Court finds that these rates are well within the range of reasonableness for this type of work.